**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

K.B. by guardian Suzanne Blade-Thompson,
SUZANNE BLADE-THOMPSON, and
JAMES BLADE,

         Plaintiffs,

     v.

SAMUEL FIES, SCHOOL TOWN OF
HIGHLAND, and RONALD W. FRAZIER,

        Defendants.

CAUSE NO.: 2:17-CV-474-TLS

**OPINION AND ORDER**

This matter is before the Court on the Defendant School Town of Highland's Motion for

Summary Judgment as to All Counts Against It [ECF No. 104] and a Motion for Summary

Judgment [ECF No. 124], filed by Defendant Ronald W. Frazier. For the reasons set forth below,

the Court GRANTS the School Town of Highland's motion and GRANTS in part and DENIES

in part Frazier's motion.

**BACKGROUND**

The Plaintiffs K.B. by guardian Suzanne Blade-Thompson, Suzanne Blade-Thompson,

and James Blade filed their Complaint [ECF No. 6] against the Defendants Samuel Fies, the

School Town of Highland (STOH), and Ronald W. Frazier in the Lake County, Indiana, Circuit

Court on October 6, 2017. The case was removed to this Court on December 22, 2017. ECF No.

1. The Complaint alleges that, in 2010 and 2011, Fies, a teacher and athletic coach with STOH,

targeted K.B. on a dating website. Compl. ¶¶ 17–23, ECF No. 6. At the time, K.B. was a special

needs student in STOH with known mental disabilities and handicaps and was under eighteen

years old; Fies was more than four years older than K.B. *Id*. at ¶¶ 15–17. Fies contacted K.B.

through text messages, picture messages, telephone calls, and internet instant messaging services, sending and soliciting sexually explicit text messages and successfully soliciting telephonic masturbation. *Id*. at ¶¶ 22–23. When K.B. learned that she had been communicating with Fies, she became emotionally distressed and fearful, transferred to a different school district, and experienced severe mental, cognitive, and emotional damages. *Id*. at ¶¶ 34–35, 39; *see also* Ex. D at Nos. 17, 18, 19 (Pls.' Ans. to Interrog.), ECF No. 105-5.

In Counts I through XI, brought against Defendant Fies, K.B. alleges (1) Indiana state law claims based on criminal conduct that falls within the scope of the Crime Victims Relief Act as well as claims of personal injury, intentional infliction of emotional distress, negligent infliction of emotional distress, and sexual harassment (Counts I through VII) and (2) federal claims of sexual exploitation, knowing receipt of child pornography, civil rights violations under 42 U.S.C. § 1983, and a violation of Title IX (Counts VIII through XI).[1] Fies filed an Answer, Affirmative Defenses, and Request for Trial by Jury [ECF No. 35] on February 16, 2018. These claims remain pending and are not the subject of either motion for summary judgment.

Against Defendant STOH, K.B. brings claims Counts XII through XV under (1) 42 U.S.C. § 1983 for violations of her rights to equal access to education, equal protection, and due process under the Fifth and Fourteenth Amendments to the United States Constitution, alleging that STOH failed to properly train and supervise its employees and that she was subject to harassment and a hostile educational environment on the basis of her gender and disability during her education as a result of Fies' alleged misconduct (Counts XII and XIII); (2) Title IX, alleging that STOH subjected her to a hostile educational environment based on her gender and disability (Count XIV); and (3) Indiana state law, alleging negligent hiring and retention of Fies

---

[1] Count XI, brought against Fies, is misnumbered in the Complaint as Count XII. *See* Compl. at 10–11.

and negligent failure to have proper procedures and policies (Count XV). These counts are the subject of STOH's Motion for Summary Judgment [ECF No. 105].

Counts XVI and XVII are legal malpractice claims against K.B.'s former attorney, Defendant Ronald W. Frazier, brought by K.B. and by Blade-Thompson and Blade, respectively. These counts are the subject of Frazier's Motion for Summary Judgment [ECF No. 124].

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). Facts that are

outcome determinative under the applicable law are material for summary judgment purposes.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## MATERIAL FACTS

**A.     K.B.'s Background**

K.B., who was born in August 1993, has been in special education since Kindergarten. Ex. A 5:11 (K.B. Dep.), ECF No. 125; Ex. B 31:16–17, 33:15–17, 34:8–24 (Blade-Thompson Dep.), ECF No. 105-3.[2] Shortly after starting high school, K.B. began experiencing issues that prompted her parents to seek psychiatric and psychological treatment for her. Ex. A 54:24– 57:25; Ex. B. 17:13–21. K.B. was diagnosed with bi-polar depression, obsessive-compulsive disorder, and panic attacks. Ex. A 63:23–64:7; Ex. B 26:1–6; Ex. C at VIERS 00001 (Doc. Prod. by Dr. L. Viers), ECF No. 126. Because many of these issues affected her in school, K.B. was placed on a homebound study program for her junior year. Ex. A 37:3–11, 37:23–25; Ex. D at No. 15. K.B. graduated from high school in 2012 with a basic diploma. Ex. A 36:9–10, 39:10– 14, 94:12–20, 96:24–97:7; Ex. B 34:20–35:2.

**B.     Blade-Thompson's Guardianship of K.B.**

When K.B. was nearing the age of majority and still in high school, it was suggested that Blade-Thompson seek a guardianship so that she could participate in medical and educational decisions, such as school meetings regarding K.B.'s individual education plan. Ex. B 29:11–

---

[2] Exhibits designated as "Ex." followed by a letter are references to STOH's exhibits. The facts are taken from STOH's and Frazier's Statements of Material Facts [ECF Nos. 105-1, 124-1] and K.B.'s Statement of Genuine Disputes [ECF No. 117] to the extent they are material, undisputed, and supported by evidence. Although K.B.'s filing is titled "Statement of Genuine Disputes," K.B. did not respond to either of the Defendants' Statement of Material Facts or identify any material facts that are in dispute, offering instead her own statement of facts. *See* N.D. Ind. L.R. 56-1(b)(2) ("The [nonmoving party's] response brief or its appendix must include a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary."). Thus, the Court considers the Defendants' facts as undisputed for purposes of the motion. *See* Fed. R. Civ. P. 56(e)(2).

30:5. Blade-Thompson also did not believe that K.B. had the ability to make her own decisions. *Id.* 31:3–11. On January 4, 2013, Blade-Thompson filed a Petition for Appointment of Guardian Over Incompetent Adult due to K.B.'s developmental disabilities and mental issues, including, but not limited to, depression, bipolar, and OCD. Pls.' Second Unnumbered Ex., ECF No. 117, pp. 12–14; Ex. R at ¶¶ 3, 4 (Order to Reopen Guardianship), ECF No. 135. K.B.'s psychiatrist Dr. Jayachandran provided a Physician's Report dated October 17, 2012, to the court for the guardianship petition, opining that K.B. "has been totally incapacitated for five (5) years." Pls.' Ex. A, ECF No. 117, pp. 9–11; *see also* Ex. B 36:17–37:13.

On February 12, 2013, the Lake Superior Court, Probate Division issued an Order Appointing Guardian Over the Person of Incapacitated Person, which ordered, adjudged, and decreed that "K.B. by reason of her incapacity is unable to care for her person and estate and is therefore adjudicated to be [an] incapacitated person and guardian over her person and estate are necessary." Pls.' First Unnumbered Ex., p. 2, ¶ 1, ECF No. 117, pp. 7–8. On January 13, 2017, the state court set the matter for a hearing for February 21, 2017. Ex. R at ¶ 8; Ex. S (Jan. 13, 2017 Order), ECF No. 136. Due to a change of address, Blade-Thompson did not receive the court's notice; as a result, she did not file the necessary paperwork or appear at the hearing, and the court closed the guardianship on June 17, 2017. Ex. R at ¶¶ 9, 10, 11. On May 21, 2018, Blade-Thompson learned from her attorney in this litigation that the guardianship had been terminated. *Id*. at ¶ 12. On June 18, 2018, the state court issued an Order to Reopen Guardianship and Appoint Guardian. *Id.* at ¶ 13.

## C.   K.B.'s Communications with Fies

In February 2011, K.B. enrolled in online dating sites with Blade-Thompson's approval. Ex. B 63:5–64:13; Ex. D at No. 8; Ex. E at STATE00031–32, ECF No. 127; Ex. F 31:1–8 (Tr. of

K.B. Police Interview), ECF No. 105-7. Before K.B. could meet face-to-face with someone she met online, she had to first introduce the person to her parents. Ex. B 64:14–65:23; Ex. G 29:11–21 (Blade Dep.), ECF No. 105-8. K.B. started communicating with a man (later determined to be Fies), who operated under the handle "s10renew," and the communications were sexually explicit. Ex. F 7:25–9:9; Ex. D Nos. 8, 11; Ex. E at STATE00031–32; Ex. H at No. 10 (Pl.'s RFA Resp.), ECF No. 105-9. Fies used his personal electronic devices to communicate with K.B., and the analysis of his high school and middle school computers did not contain anything relevant to this case. Ex. E STATE00018–27. At the end of August or early September 2011, K.B. stopped communicating with the man she later learned to be Fies because he refused to meet her parents. Ex. A 165:7–20; Ex. D at No. 11; Ex. E at STATE00031–32.

**D.     STOH's Awareness of Fies' Misconduct**

On October 11, 2011, Highland High School cross country coach Elissa Belli received a phone call from the brother of a female student, who told her that Fies had inappropriate contact with his sister (who was not K.B.). Ex. E at STATE00035. At approximately 9:15 p.m. that night, Belli called Highland High School's School Resource Officer, Sergeant Michael O'Donnell, and Child Protective Services was also notified. *Id.* at STATE00035; Ex. I at Nos. 12, 15 (STOH's Ans. to First Interrogs.), ECF No. 105-10; Ex. J at ¶ 8 (Decl. of Dr. P. Weil), ECF No. 105-11. At approximately 7:20 a.m. the following day, October 12, 2011, a meeting was held in the office of Highland High School Principal Dr. Patrick Weil with Sergeant O'Donnell, Dr. Weil, and the students who reported Fies' misconduct. Ex. E at STATE00035; Ex. J at ¶ 9. Fies was removed from the Highland High School premises that same day, was never allowed to return, and was later terminated for cause. Ex. I at Nos. 13, 15; Ex. J at ¶ 9; Ex. K at STOH001–2 (STOH Doc. Prod.), ECF No. 128.

Dr. Weil states in his declaration that, prior to October 11, 2011, Highland High School had no actual knowledge of Fies' misconduct. Ex. J at ¶¶ 8, 10. In its answers to interrogatories, STOH responded that, to its knowledge, no agent or employee of STOH had actual or constructive knowledge of Fies' misconduct prior to the student's report to Belli. Ex. I at Nos. 12, 15, 19, 21; *see also* Ex. E at STATE00018–27, 35.

Upon being informed by STOH of Fies' misconduct, law enforcement initiated an investigation. *See generally* Ex. E; Ex. F. As a result of the investigation, it was discovered that Fies used his personal cell phone and personal computer to communicate with K.B. Ex. E at STATE00018–27; Ex. J at ¶ 11. "No relevant information" was found on Fies' school computers that were inspected. Ex. E at STATE00018–27; *see also* Ex. J at ¶ 11.

**E.     K.B. Discovers Fies' Identity**

K.B. was interviewed on November 3, 2011, as part of the police investigation into Fies' alleged misconduct; this is when she and her parents first learned that she had been communicating with Fies. Ex. A 162:23–166:20; Ex. B 70:14–71:14, 74:11–75:6; Ex. D at No. 11; Ex. E at STATE00031–32; Ex. F 7:25–8:8; Ex. G 29:25–31:16; Ex. H at Nos. 11, 12, 13. Once K.B. learned that she had been communicating with Fies, K.B. became extremely embarrassed and paranoid, developed severe social anxiety, became extremely mistrustful of men, and became apprehensive of groups. Ex. D at Nos. 17, 18, 19.

**F.     STOH Policies**

At the time of Fies' removal, STOH and Highland High School maintained policies for the acceptable use of the school's computing systems, networks, and related facilities, as well as policies for appropriate email and internet use. Ex. I at Nos. 11, 23; Ex. J at ¶ 12; Ex. K at STOH00254–57, 270–76; Ex. L at Nos. 1, 4, 5 (STOH's Ans. to Pls. Second Interrogs.), ECF

No. 105-13. STOH employs a systems administrator who is able to monitor staff internet use. Ex. L at Nos. 1, 4, 5; Ex. K at STOH00270–277.

STOH maintained a procedure for identifying and reporting suspected child abuse and neglect during the time period at issue in this case:

> [A]ny teacher or other member of the school corporation's staff who has reason to believe that a child's physical or mental health or welfare may be adversely affected by abuse or neglect, shall immediately report their suspicions to the building principal (or direct supervisor). The building principal or his/her designee shall proceed in the following manner as expeditiously as possible: . . . If child abuse or neglect is [] suspected, immediately make an oral report to the local child protection service [] or law enforcement agency.

Ex. K at STOH0264–65; *see also* Ex. J at ¶ 13. Employees and administrators who did not abide by these policies were subject to discipline up to and including termination and could be subject to losing teaching and administrative licenses. Ex. J at ¶¶ 7, 12; Ex. K at STOH0265. STOH maintains anti-harassment policies. Ex. K at STOH0003–14, STOH00245. STOH trains its teachers with respect to its policies. Ex. I at No. 23. Highland High School vigorously enforces all of the policies at issue. Ex. J at ¶¶ 6–15.

Since before the events at issue in this lawsuit, STOH has utilized a third-party consultant—Neola (formerly known as North East Ohio Learning Associates)—for purposes of developing and implementing policies and practices. Ex. M at ¶ 6 (Decl. of B. Smith), ECF No. 105-14. Neola, a trusted consultant for the development and implementation of school policies and practices, provides services to over 1,400 schools across the Midwest, including over 200 schools in Indiana. *Id.* at ¶¶ 7, 8. Neola develops customized policies, guidelines, and procedures based on Neola's attorney-reviewed templates and publishes two updates per year with proposed revisions and recommendations. *Id.* at ¶ 7.

8

STOH's policies are consistent with policies implemented by school districts in Indiana and across the Midwest. Ex. I at Nos. 11, 23; Ex. K at STOH0003–14, 0221–29, 0230–68, 0270–76; Ex. L at Nos. 1, 5; Ex. M at ¶¶ 6–8. Highland High School's policies and practices are consistent with those that schools implement to protect against inappropriate communications between teachers and students. Ex. J at ¶¶ 12–14; Ex. M at ¶ 8. Likewise, Highland High School's policies with respect to teacher hiring, retention, and supervision are produced in consultation with Neola and are consistent with policies adopted across Indiana and the Midwest. Ex. J at ¶ 15; Ex. M at ¶¶ 7–8.

**G.      Retention of Attorney Frazier**

In 2011, Blade-Thompson considered filing a lawsuit with respect to the communications between K.B. and Fies, and Blade-Thompson testified that K.B. was supportive of the idea. Ex. B 97:23–98:21. In 2011, Blade-Thompson retained attorney Ronald W. Frazier to represent K.B. in a lawsuit against Fies and STOH. Compl. ¶¶ 43, 124, 125; Frazier Ex. 3 ¶ 9 (Frazier Aff.), ECF No. 124-2. On June 20, 2012, Frazier submitted a letter to the Indiana Political Subdivision Risk Management Commission, Office of the Attorney General of Indiana, Principal Weil, Superintendent Boskovich, and the STOH School Bord, regarding the events involving Fies in this case. Ex. I at No. 17; Ex. O, ECF No. 131; Frazier Ex. 3 ¶ 10.

On March 6, 2014, Frazier resigned his license to practice law at the request of the Indiana Supreme Court Disciplinary Commission. Frazier Ex. 3 ¶ 4. In his Affidavit, Frazier states that, prior to that date, he informed Blade-Thompson that he was resigning his license, that he would no longer be practicing law, that he could no longer represent K.B. and Thompson-Blade individually, that Thompson-Blade would have to retain another attorney, and that he could provide her with the names of attorneys who practice in this area of law. *Id.* at ¶¶ 5–8. In

contrast, Blade-Thompson testified that, at some point after the June 20, 2012 letter, she learned that Frazier would no longer be handling the case, that Frazier was disbarred, and that Frazier told her he was going to give the case to another lawyer who would be contacting her. Ex. B 100:8–15, 101:6–15, 111:2–113:3. Eventually, Blade-Thompson reached out to her current attorney. *Id.* 114:12–115:20.

Frazier never spoke to or met James Blade, was never asked to represent Blade, and did not believe that he represented Blade. Frazier Ex. 3 ¶¶ 11–15. Blade did not attempt to contact Frazier. Ex. G 5:24–25, 36:5–37:2. Because of the statute of limitations, Blade-Thompson and Blade are not seeking damages against Fies or STOH in this lawsuit. Ex. H at Nos. 7, 8; *see also* Compl. at pp. 17–18, 21. Instead, they are seeking compensation from Frazier for their derivative claims. Ex. H at Nos. 7, 8; *see also* Compl. at pp. 17–18, 21.

## ANALYSIS

The Court first considers STOH's motion for summary judgment on K.B.'s Title IX, § 1983, and state law claims. The Court then turns to Frazier's motion for summary judgment on the legal malpractice claims brought by K.B. and by Blade-Thompson and Blade.

**A.     STOH's Motion for Summary Judgment**

*1.     Title IX*

Title IX of the Education Amendments of 1972 provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A student who suffers sexual harassment by a teacher may recover damages against the school district but "only if the school district acts with 'deliberate indifference' to the harassment." *Doe-2 v. McLean Cnty. Unit Dist.*

10

*No. 5 Bd. of Dirs.*, 593 F.3d 507, 512 (7th Cir. 2010) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). "The standard of deliberate indifference sets a high bar for plaintiffs under . . . Title IX." *Doe v. Galster*, 768 F.3d 611, 619 (7th Cir. 2014) (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999)).

To impose liability on the school district for a teacher's conduct, the school district must have "actual knowledge of a teacher's sexual harassment *and* acted with deliberate indifference to the misconduct." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 605 (7th Cir. 2008) (citing *Gebser*, 524 U.S. at 288–93; *see also Doe-2*, 593 F.3d at 512. Mere negligence is not sufficient, *see Galster*, 768 F.3d at 619, nor is it sufficient that the school district "should have known" about the alleged harassment, *Hansen*, 551 F.3d at 605 ("The Supreme Court has flatly rejected applying a 'knew or should have known' standard to Title IX claims." (quoting *Gebser*, 524 U.S. at 277)). This requirement ensures that school districts are "liable for their own misconduct, not for the misconduct of an employee." *Id.* (citing *Gebser*, 524 U.S. at 289–90). In addition, "the school district must have 'substantial control over both the harasser and the context in which the known harassment occurs.'" *Doe-2*, 593 F.3d at 512 (quoting *Davis*, 526 U.S. at 645). The "substantial control" element means that "a school district cannot be liable for its indifference to harassment that it lacks the authority to prevent." *Id.* at 512 (citing *Davis*, 526 U.S. at 644).

STOH seeks summary judgment on K.B.'s Title IX claim on two grounds. First, STOH argues that K.B. cannot establish that it had actual knowledge of Fies' misconduct prior to October 11, 2011. Second, STOH contends that K.B. cannot show that it had substantial control over the context in which Fies' harassment of K.B. occurred. Summary judgment is warranted for both reasons.

11

a.    Actual Knowledge

"School administrators have actual knowledge only of the incidents that they witness or that have been reported to them." *Galster*, 768 F.3d at 618. Dr. Weil, Highland High School's principal, states in his declaration that, prior to the October 11, 2011 student report to cross country coach and teacher Ms. Belli, "Highland High School did not have any actual knowledge of Mr. Fies' inappropriate conduct and the school also had no reason to believe that Mr. Fies would engage in any such inappropriate conduct." Ex. J, ¶ 10. K.B. offers no evidence to create a genuine issue of material fact as to STOH's actual knowledge.

In response to summary judgment, K.B.'s only argument is that STOH "did know or should have known that Fies was engaged in improper sexual misconduct with student(s)." Pls.' Resp. 1, ECF No. 111. First, as set forth above, the "knew or should have known" standard has been rejected in favor of the actual knowledge standard. *See Hansen*, 551 F.3d at 605 (quoting *Gebser*, 524 U.S. at 277). Second, K.B. offers no evidence to establish that STOH "did know" of Fies' misconduct prior October 11, 2011. Instead, she references the investigation of Fies for sexual misconduct with a minor that allegedly occurred between May 2009 and October 2011 at Highland Middle and High Schools. Ex. E at STATE00035.[3] However, the investigation was only commenced *after* the student report to Ms. Belli on October 11, 2011; the subsequent

---

[3] In support of this argument, K.B. cites only the Plaintiffs' own interrogatory answers that Fies was harassing and abusing two other students on STOH property and at STOH events between May 2009 and October 2011. Pl.'s Stmt. of Genuine Disputes ¶ 17, ECF No. 117 (citing Ex. D at Nos. 12, 16). STOH objects, arguing that the Plaintiffs lack personal knowledge to make the statements and that the interrogatory answers contain inadmissible hearsay. STOH's Resp. to Pls.' L.R. 56-1 Statement of Material Facts ¶ 17, ECF No. 122 (citing Fed. R. Evid. 602, 801); *see also* Fed. R. Civ. P. 56(c)(2) (providing that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"). However, STOH's Exhibit E separately references the investigation of the harassment that allegedly occurred from May 2009 to October 2011. *See* Ex. E at STATE00035.

12

investigation is not evidence that STOH had actual knowledge of Fies' misconduct prior to October 11, 2011.

Therefore, because K.B. has offered no evidence to show that STOH had actual knowledge of Fies' misconduct at the time that K.B. was communicating with Fies, she cannot establish deliberate indifference. The Court grants summary judgment in favor of STOH on K.B's Title IX claim.

 b. Substantial Control

Summary judgment is also warranted because K.B. has not offered any evidence to establish that STOH had substantial control over the context in which Fies harassed K.B. *See Doe-2*, 593 F.3d at 512. The forensic investigation conducted by the police determined that Fies used his personal cell phone and computer to communicate with K.B. and that the school computers provided for inspection contained no relevant information. *See* Ex. E at STATE00018–27.

*2. Section 1983*

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To prevail on a claim under § 1983, a plaintiff must show that the defendant deprived her of a federal constitutional right and that the defendant acted under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006) (citations omitted). In Counts XII and XIII, K.B. alleges violations of her constitutional rights to equal access to education, equal

protection, and due process under the Fifth and Fourteenth Amendments to the United States Constitution.

A municipality, including a school district, can only be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see Cornfield ex rel. Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir. 1993). The doctrine of respondeat superior is not applicable in § 1983 cases. *Monell*, 436 U.S. at 691; *see Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001).

a.      Count XIII—*Monell* Liability for Fies' Harassment

To prevail against a municipality under § 1983, a plaintiff must show that the unconstitutional act complained of was caused by: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)); *see also Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257–58 (2009) ("A plaintiff stating a . . . claim via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice." (citing *Monell*, 436 U.S. at 694)). A plaintiff bringing a *Monell* claim "must also prove that the policy or custom demonstrates municipal fault" by showing "that the municipality's action was taken with deliberate indifference to the plaintiff's constitutional rights." *First Midwest Bank*, 988 F.3d at

14

986–87 (internal quotation marks omitted) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 407 (1997)). Finally, the plaintiff must "prove that the municipality's action was the 'moving force' behind the federal-rights violation." *Id*. at 987 (quoting *Brown*, 520 U.S at 404).

STOH argues that K.B. has offered no evidence to establish municipal liability for Fies' actions. Indeed, K.B. has offered no evidence of an official policy, a widespread and well-settled practice or custom, or involvement of an official with final policy-making authority. K.B.'s generic allegation in her Complaint that STOH "failed to train, supervise, and have proper policies and procedures in place to protect [K.B.] and other mentally disabled females from sexual predators such as . . . Fies," Compl. ¶ 107, is insufficient to survive summary judgment. As discussed in the context of the Title IX claim, it is undisputed that STOH did not learn of Fies' misconduct until October 11, 2011, and STOH took swift action based on that knowledge the same evening and the following day, permanently expelling Fies from the premises and ultimately terminating his employment. K.B. offers no evidence in response to summary judgment from which a reasonable trier of fact could find municipal liability for Fies' conduct. *See First Midwest Bank*, 988 F.3d at 987 ("A plaintiff must prove that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences." (citing *Brown*, 520 U.S. at 407)). Accordingly, the Court grants summary judgment in favor of STOH on K.B.'s *Monell* claim in Count XIII.

      b.      Count XII—Failure to Train

STOH likewise seeks summary judgment on K.B.'s allegations in Count XII that STOH is liable for failing to train and supervise its employees, which resulted in the disparate treatment of K.B., a disabled, female student, in violation of her Fourteenth Amendment right to equal protection. A claim based on a "'failure to train' is available only in limited circumstances."

*Cornfield ex rel. Lewis*, 991 F.2d at 1327. To prevail on such a claim, a plaintiff must show that the school district's "failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of students." *Id.* (quoting *City of Canton v. Harris,* 489 U.S. 378, 389 (1989)). "The Supreme Court reasoned that policymakers would be deliberately indifferent when 'in light of the duties assigned to the specific . . . employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights.'" *Id.* (quoting *City of Canton*, 489 U.S. at 390).

Here, K.B.'s response brief does not address this claim or offer any evidence regarding STOH's training or supervision of its teachers and coaches. K.B. does not identify a need for more or different training, identify the inadequacy of training offered, or identify a known pattern of similar constitutional violations; moreover, K.B. does not offer any evidence of a failure to train or supervise that was a moving force behind Fies' alleged sexual harassment of K.B. *See Barnes v. City of Centralia*, 943 F.3d 826, 832 (7th Cir. 2019) (finding that the plaintiff's *Monell* claim based on a failure to train or supervise failed because the plaintiff submitted "no evidence in support of the clam, much less evidence that a failure to train or supervise was 'the moving force' behind" the alleged constitutional violation) (quoting *Monell*, 436 U.S. at 694)); *Cornfield ex rel. Lewis*, 991 F.2d at 1327 (explaining that liability must be "based on a finding that the policymakers have actual or constructive notice [of] a particular omission that is likely to result in constitutional violations," which avoids the risk of "creating *de facto respondeat superior* liability" (citing *Monell*, 436 U.S. at 693–94)). Once again, to the extent K.B.'s claim relies on the police investigation of Fies that began after October 11, 2011, it is undisputed that STOH was not aware of Fies' alleged misconduct prior to October 11, 2011. K.B. has offered no evidence regarding the investigation of Fies that would support her failure to

train or supervise claim. *See Jenkins v. Bartlett*, 487 F.3d 482, 492–93 (7th Cir. 2007) (finding

no genuine issue of material fact on a failure to train claim because the plaintiff had not offered

sufficient evidence that the city had actual or constructive knowledge of other constitutional

violations). Accordingly, the Court grants summary judgment in favor of STOH on Count XII of

the Complaint as well.

*3.      State Law Negligence Claims*

In Count XV, K.B. brings state law negligence claims against STOH, alleging that STOH

was negligent in hiring and retaining Fies and that STOH was negligent in failing to have proper

policies and procedures for surveillance, internet usage, technology and classroom monitoring,

contact between teachers and students, and supervising school premises. Compl. ¶¶ 115–20.

Under Indiana law, a claim for negligent hiring and retention requires evidence of the

following: "1) a duty of care owed by an employer to a third person; 2) a breach of that duty; and

3) injury to the third person proximately caused by the employer's breach." *Scott v. Retz*, 916

N.E.2d 252, 257 (Ind. Ct. App. 2009). Indiana courts have adopted the Restatement (Second) of

Torts § 317, which provides:

> A master is under a duty to exercise reasonable care so to control his servant
> while acting outside the scope of his employment as to prevent him from
> intentionally harming others or from so conducting himself as to create an
> unreasonable risk of bodily harm to them, if
>   (a) the servant
>       (i) is upon the premises in possession of the master or upon which the
>           servant is privileged to enter only as his servant, or
>       (ii) is using a chattel of the master, and
>   (b) the master
>       (i) knows or has reason to know that he has the ability to control his
>           servant, and
>       (ii) knows or should know of the necessity and opportunity for exercising
>           such control.

17

*Hayden v. Franciscan All., Inc.*, 131 N.E.3d 685, 693 (Ind. Ct. App. 2019) (quoting Restatement (Second) of Torts § 317), *transfer denied*, 141 N.E.2d 18 (Table) (2020).

In its motion, STOH argues that K.B. lacks any evidence that it breached a duty owed to her. In response, K.B. argues only that STOH had a "duty to screen and investigate any new hires that will be exposed to vulnerable children," Pls.' Resp. ¶ 5, but offers no evidence of a breach of duty. She offers no evidence of STOH's procedures for screening and investigating new hires or the process used for hiring Fies. In contrast, STOH offers the criminal background check of Fies, dated August 8, 2003, which shows no records found. *See* Ex. K at STOH0000066. Moreover, as discussed above, there is no evidence that STOH knew or should have known of Fies' alleged sexual misconduct with a student until October 11, 2011. *See Hansen*, 551 F.3d at 609–10 (noting that, for a claim of negligent hiring and retention, Indiana courts have applied both a standard requiring that the employer have "actual knowledge" of misconduct as well as a standard that the employer "should have known or had reason to know of the misconduct"). Finally, the undisputed evidence of record is that Fies was using personal, not school, devices to communicate with K.B. to facilitate the alleged sexual misconduct. Thus, K.B. cannot succeed on a claim of either negligent hiring or negligent retention.

As for the negligence claim based on STOH's alleged lack of certain policies and procedures, STOH argues that K.B. lacks any evidence that its policies were unreasonable. K.B. offers no argument or evidence in support of this claim. *See Lewandowski v. City of Milwaukee*, 823 F. App'x 426, 430 (7th Cir. 2020) ("A district court is entitled to expect a party . . . opposing summary judgment to lay out her arguments and the supporting, admissible evidence in sufficient detail that the court is not forced to construct the arguments itself."). The undisputed evidence is that Highland High School maintained policies for the acceptable use of the school's

computing systems, network, and related facilities; appropriate email and internet use; mandatory reporting requirements; and teacher hiring, retention, and supervision. And, those policies are consistent with the recommendations of a respected third-party consultant and with the standard policies and practices that school systems implement to protect against inappropriate communications between teachers and students. In addition, STOH trains its teachers with respect to its policies.

For these reasons, summary judgment is granted in favor of STOH on K.B.'s state law negligence claims in Count XV.[4]

## B.   Defendant Frazier's Motion for Summary Judgment

In Count XVI, K.B. alleges that the failure of her former attorney, Defendant Ronald W. Frazier, to file this lawsuit within the two-year statute of limitations constitutes legal malpractice under Indiana state law. Compl. ¶¶ 135–36. In Count XVII, Blade-Thompson and Blade (K.B.'s parents) allege that Frazier's failure to advise them of their right to sue for their own loss of services, lost wages, consequential damages, and emotional distress against both Fies and STOH constitutes legal malpractice. *Id.* at ¶¶ 139–43.

"To prevail on a legal malpractice claim, a plaintiff must establish: (1) employment of the attorney and/or firm (duty); (2) failure of the attorney and/or firm to exercise ordinary skill and knowledge (breach); (3) proximate cause (causation); and (4) loss to the plaintiff (damages)." *Gates v. O'Connor*, 111 N.E.3d 215, 223–24 (Ind. Ct. App. 2018), *trans. denied*, 123 N.E.3d 143

---

[4] Because summary judgment has been granted in favor of STOH on all claims against it, both state and federal, the Court need not address STOH's affirmative defenses that K.B.'s state law claims are barred for failure to file a timely notice under the Indiana Tort Claims Act and that K.B.'s state and federal claims are barred by the applicable two-year statute of limitations. The Court notes that K.B. asserts tolling exceptions to both defenses based on her mental impairments and the legal guardianship that was established in February 2013, arguing that she is an "incapacitated person" in relation to the tort claims notice, *see* Ind. Code §§ 29-3-1-7.5(2), 34-13-3-9, and that she is a person "under legal disabilities" in relation to the statute of limitations, *see* Ind. Code § 34-11-6-1.

(Table) (2019) (citation omitted). The "'trial within a trial' doctrine governs claims for legal malpractice" under Indiana law on the element of proximate cause. *Id*. at 224 (quoting *Roumbos v. Vazanellis*, 95 N.E.3d 63, 65–66 (Ind. 2018)). Under this doctrine, "the client must show that 'the outcome of the botched representation would have been more favorable to the client had the lawyer not been negligent.'" *Id.* (quoting *Roumbos*, 95 N.E.3d at 65–66).

Frazier seeks summary judgment on both counts, arguing that K.B.'s legal incapacity tolls the statute of limitations on her underlying claims; that he had no attorney-client relationship with Blade; that Blade-Thompson and Blade cannot succeed on their derivative claims if STOH prevails on its motion for summary judgment as to K.B.'s claims; and that, as to Blade-Thompson and Blade's emotional distress claim, there is no evidence of a direct impact.

As an initial matter, neither K.B. nor her parents can satisfy their burden on causation for legal malpractice arising out of K.B.'s underlying claims against STOH. To do so, they would have to prove, in a "trial within a trial," that the outcome of their claims against STOH would have been more favorable if Frazier had not allegedly breached his duty. However, the Court has granted summary judgment in favor of STOH on the merits of all K.B.'s claims and not on STOH's statute of limitations defense, which is the basis of K.B.'s malpractice claim against Frazier. In response to Frazier's motion for summary judgment, K.B. has offered no argument or evidence that any delay caused by Frazier changed the outcome of her claims against STOH on the merits. Thus, K.B.'s malpractice claim against Frazier stemming from her Title IX, § 1983, and negligence claims against STOH must fail. In addition, because any claims her parents would have had against STOH are derivative of K.B's claims against STOH, their malpractice claim against Frazier based on potential derivative claims against STOH must also fail.

Therefore, the Court grants Frazier's motion for summary judgment on the attorney malpractice claims arising out of any underlying claims against STOH.

This leaves K.B.'s pending claims against Defendant Fies as a basis for her own legal malpractice claim against Frazier for failing to file the lawsuit within the two-year statute of limitations as well as her parents' legal malpractice claim for the alleged failure to advise them of their potential derivative claims.[5] The Court considers each of Frazier's summary judgment arguments in turn.

1.    *Statute of Limitations*

Frazier argues that K.B. cannot satisfy the breach of duty element on her malpractice claim—that Frazier failed to file the lawsuit within the two-year statute of limitations—because the statute of limitations on her underlying claims is tolled as a result of her legal incapacity as evidence by the legal guardianship. K.B. responds that, although she likewise contends that the statute of limitations on the underlying claims is tolled because she is under legal disabilities, that issue has not yet been resolved. She argues that, if the statute of limitations is not tolled and her claims are barred by the statute of limitations, then Frazier was negligent for not timely filing the underlying lawsuit and should be liable for the damages on those barred claims.

To put this in context, K.B.'s remaining claims are against Fies for his alleged sexual harassment, brought under Indiana state law as well as § 1983 and Title IX. In his Affirmative Defenses, which are *not* before the Court on this motion, Fies alleges that K.B.'s claims are barred by the statute of limitations. *See* Fies' Affirmative Defenses ¶ 8, ECF No. 39, p. 32. "While the statute of limitations is an affirmative defense, the burden of establishing an exception thereto is on plaintiff." *Knox v. Cook Cnty. Sheriff's Police Dep't*, 866 F.2d 905, 907

---

[5] In the briefing on Frazier's motion for summary judgment, the parties do not acknowledge the pendency of K.B.'s underlying claims against Fies or discuss the effect of those claims on the parties' arguments.

(7th Cir. 1988) (citing *Drazan v. United States*, 762 F.2d 56, 60 (7th Cir. 1985)). Because the

statute of limitations for both the § 1983 and Title IX claims is borrowed from state law, state

law supplies the tolling rules for all the claims. *See Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir.

1992) (§ 1983) (citing *Hardin v. Straub*, 490 U.S. 536, 543–44 (1989); *Board of Regents v.*

*Tomanio*, 446 U.S. 478, 484 (1988)); *Doe v. Howe Military Sch.*, 227 F.3d 981, 987–88 (7th Cir.

2000) (Title IX). Under Indiana law, "[a] person who is under legal disabilities when the cause of

action accrues may bring the action within two (2) years after the disability is removed." Ind.

Code § 34-11-6-1. "Under legal disabilities" is defined as including "persons less than eighteen

(18) years of age, mentally incompetent, or out of the United States." Ind. Code § 1-1-4-5(24).[6]

Thus, it appears that, if Fies asserts the affirmative defense at trial, K.B. would have to establish

the exception that she was under legal disabilities when her claim accrued no later than

November 3, 2011, in order to toll the statute of limitations.[7]

There has not yet been a resolution of Fies' affirmative defense of the statute of

limitations or of K.B.'s claims against Fies on the merits. Therefore, the Court denies Frazier's

---

[6] "Mentally incompetent," in turn, means "of unsound mind." Ind. Code § 1-1-4-5(12). "Of unsound mind" is not currently defined in the Indiana Code. *See Whitlock v. Steel Dynamics, Inc.*, 35 N.E.3d 265, 270 (Ind. Ct. App. 2015) (citing *Fager v. Hundt*, 610 N.E.2d 246, 250 n.2 (Ind. 1993)). However, as noted by the Indiana Court of Appeals in *Whitlock*, a statute that was repealed in 1990 defined "of unsound mind" to include "idiots, noncompotes (non compos mentis), lunatics and distracted persons," and the phrase "distracted persons" was construed to mean "a person who by reason of his or her mental state is incapable of managing or procuring the management of his or her ordinary affairs." *Id.* (citations omitted). To be considered of unsound mind, the relevant proof "is whether the person claiming the benefit of the extension statute is incapable of either understanding the rights that he would otherwise be bound to know, or of managing his affairs, with respect to the institution and maintenance of a claim for relief." *Collins v. Dunifon*, 323 N.E.2d 264, 269 (Ind. Ct. App. 1975).

[7] "The issue of unsoundness of mind is ordinarily a question for the trier of fact." *Whitlock*, 35 N.E.3d at 274 (May, J., dissenting) (quoting *Collins*, 323 N.E.2d at 269). K.B.'s legal guardianship was established in February 2013. The Court recognizes that "the appointment of a guardian over an incompetent adult does not remove the legal disability under Indiana Code Sec. [34-11-6-1]. A person under legal disabilities may, through an appointed guardian, bring an action at any time during the legal disability." *Barton-Malow Co., Inc. v. Wilburn*, 556 N.E.2d 324, 326 (Ind. 1990) (emphasis added).

22

motion for summary judgment at this time on K.B.'s malpractice claim in Count XVI arising out of K.B.'s claims against Fies.[8]

### 2. *James Blade's Malpractice Claim*

Plaintiff James Blade's malpractice claim fails because there is no evidence of an attorney-client relationship between Frazier and Blade and, thus, Frazier owed no duty to Blade. *See Gates*, 111 N.E.3d at 223. Frazier offers his affidavit that he has never meet Blade and that there was no attorney-client relationship. Blade offers no evidence in response to establish the existence of the relationship. Accordingly, the Court grants summary judgment in favor of Frazier on James Blade's malpractice claim in Count XVII.

### 3. *Blade-Thompson's Malpractice Claim Based on her Derivative Claims*

Blade-Thompson's malpractice claim in Count XVII alleges that Frazier failed to advise her of her right to sue for her own loss of services, lost wages, consequential damages, and emotional distress.[9] Because these claims would be derivative of K.B.'s claims, Frazier argues that Blade-Thompson cannot show causation if K.B.'s claims fail. Though the Court has held

---

[8] Frazier also argues that the 180-day deadline to file an Indiana Tort Claims Act notice is tolled because of K.B.'s incapacity. However, it appears that the timeliness of the tort claims notice is no longer at issue because summary judgment has been granted in favor of STOH and K.B. has not alleged that Fies was acting within the scope of his employment. *See* Compl. ¶ 48, Counts I–XI; *see also* Ind. Code §§ 34-13-3-5(b), 34-13-3-8(a); *VanValkenburg v. Warner*, 602 N.E.2d 1046, 1048 (Ind. Ct. App. 1992) (explaining that the notice requirement of the Tort Claims Act applies to claims brought against employees of political subdivisions (citing *Poole v. Clase*, 476 N.E.2d 828 (1985)). Nevertheless, even if the ITCA notice is still at issue, it is also an affirmative defense that has not yet been resolved in the litigation against Fies. *See Brown v. Alexander*, 876 N.E.2d 376, 383–84 (Ind. Ct. App. 2007).

[9] Consistent with Indiana Supreme Court precedent, the parents' malpractice claim does not assert K.B.'s legal incapacity as an exception to the statute of limitation as to their derivative claims. *See Jordan v. Deery*, 609 N.E.2d 1104, 1108 (Ind. 1993) (applying the two-year statute of limitations to the derivative claim of the child's parents even though the child's direct claim for medical malpractice was subject to the longer statute of limitations giving a minor under the age of six years until the minor's eighth birthday in which to file suit); *see also In re Guardianship of French*, 927 N.E.2d 950, 959 (Ind. Ct. App. 2010) (quoting *Hansen v. Bd. of Trs. for Hamilton Se. Sch. Corp.*, 522 F. Supp. 2d 1101, 1105 (S.D. Ind. 2007) (quoting *Jordan*, 609 N.E.2d at 1108)).

that K.B.'s claims against STOH fail, K.B.'s claims against Fies have not yet been resolved.

Accordingly, the Court denies Frazier's motion for summary judgment as to Blade-Thompson's

malpractice claim in Count XVII arising out of her derivative claims based on K.B.'s claims

against Fies.

However, to the extent Blade-Thompson is alleging a derivative claim of negligent

infliction of emotional distress, the Court grants Frazier's motion. Under the "modified impact

rule," the Indiana Supreme Court recognized a claim for emotional distress "where the distress is

the result of a physical injury negligently inflicted on another":

> When . . . a plaintiff sustains a direct impact by the negligence of another and, by
> virtue of that direct involvement sustains an emotional trauma which is serious in
> nature and of a kind and extent normally expected to occur in a reasonable person,
> we hold that such a plaintiff is entitled to maintain an action to recover for that
> emotional trauma without regard to whether the emotional trauma arises out of or
> accompanies any physical injury to the plaintiff.

*Shuamber v. Henderson*, 579 N.E.2d 452, 455–56 (Ind. 1991); *see also Clifton v. McCammack*,

43 N.E.3d 213, 216–17 (Ind. 2015) ("In other words, the 'modified impact rule' does not compel

an emotionally traumatized party to demonstrate a contemporaneous physical *injury*, but it

maintains the requirement that a direct physical *impact* occur." (citing *Atl. Coast Airlines v.*

*Cook*, 857 N.E.2d 989, 996 (Ind. 2006)). Under the "bystander rule," when the modified impact

test is not met, "a bystander may nevertheless establish 'direct involvement' by proving that the

plaintiff actually witnessed or came on the scene soon after the death or severe injury of a loved

one . . . caused by the defendant's negligent or otherwise [tortious] conduct." *Clifton*, 43 N.E.3d

at 218 (quoting *Groves v. Taylor*, 729 N.E.2d 569, 573 (2000)). Here there is no evidence of a

physical injury or a direct impact or that Blade-Thompson satisfies the bystander rule.

Accordingly, the Court grants summary judgment in favor of Frazier on Blade-Thompson's

claim that Frazier negligently failed to advise her that she may have a claim of negligent infliction of emotional distress.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the Defendant School Town of Highland's Motion for Summary Judgment as to All Counts Against It [ECF No. 104] and GRANTS in part and DENIES in part Defendant Frazier's Motion for Summary Judgment [ECF No. 124]. The case remains pending only as to (1) Counts I through XI brought by Plaintiff K.B. by Guardian Suzanne Blade-Thompson against Defendant Samuel Fies, (2) Count XVI brought by Plaintiff K.B. by Guardian Suzanne Blade-Thompson against Defendant Ronald W. Frazier arising out of K.B.'s claims against Fies, and (3) Count XVII brought by Plaintiff Suzanne Blade-Thompson against Defendant Ronald W. Frazier as to her derivative claims arising out of K.B.'s claims against Fies, except as set forth above. The Court directs the Clerk of Court to show Defendant School Town of Highland and Plaintiff James Blade as terminated on the docket.

SO ORDERED on May 5, 2021.

 s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT